IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**REGENIA BROWN,**

**Plaintiff,**

**v.**

**CASEY'S RETAIL COMPANY,**

**Defendant.**                                    **12-cv-1017-DRH-SCW**

### MEMORANDUM and ORDER

**HERNDON, Chief Judge**

### I. Introduction

Now before the Court is defendant Casey's Retail Company's (CRC) motion to dismiss Count II of plaintiff Regenia Brown's (Brown) complaint (Doc. 8). CRC moves to dismiss Count II of Brown's complaint under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), arguing Brown fails to state a claim for intentional infliction of emotional distress. Specifically, CRC contends that Brown "failed to allege any severe and outrageous conduct" by CRC. Brown opposes the motion (Doc. 17). Based on the following, the Court **DENIES** the motion.

### II. Background and Allegations

On September 20, 2012, Brown filed a three-count complaint against CRC, her former employer (Doc. 2). The complaint is comprised of: Count I

for retaliatory discharge; Count II for intentional infliction of emotional distress; and Count III for a labor standards violation.

According to the complaint, Brown took leave from her employment, pursuant to the Family and Medical Leave Act on March 5, 2012, "for a serious medical condition requiring a hysterectomy." Upon returning from leave on May 1, 2012, Brown alleges she was subjected to retaliation and harassment because of her temporary absence. Brown alleges she was wrongfully discharged on May 23, 2012, in retaliation for having taken an FMLA leave.

Relevant to CRC's instant request, the allegations of Count II for intentional infliction of emotional distress are as follows:

> 10. [CRC] knew that [Brown] has suffered a serious medical condition requiring a surgical hysterectomy. [CRC], by its store manager, Connie Holland, complained to [Brown] about that the fact that she had taken FMLA leave and harassed [Brown] for taking the leave.
>
> 11. Upon [Brown's] return to work, she found [CRC's] store manager to be extremely upset with her, rude, making comments about [Brown's] poor work performance, and would bring [Brown] to tears with her negativity and harassing language. [Brown] became extremely upset and distraught and cried in [CRC's] store manager's presence. [CRC's] store manager knew [Brown] was in a weakened mental and physical condition and her comments and actions were part of a course of conduct which was consistent and began even before [Brown] took her leave with [CRC] questioning the need for her leave and complaining about the burdens it was creating for other staff.
>
> 12. [CRC] should have reasonably have known that this would create tremendous emotional upset and distress to [Brown]. [Brown] was, in fact, subjected to an intolerable and

>unbearable work environment and finally on May 23, 2012 was wrongfully discharged in retaliation for her exercising her rights for FMLA leave.
>
>13. [CRC] should have reasonably known that the wrongful discharge would cause tremendous distress and upset to [Brown] with worry over her financial condition, her loss of her career, loss of her benefits, and further upset. [Brown] suffered emotional distress which was profound requiring medical attention and medication with damages exceeding in excess of $100,000.

(Doc. 2, pp. 3-4).

## II. <u>Legal Standard</u>

A Rule 12(b)(6) motion challenges the sufficiency of the complaint to state a claim upon which relief can be granted. *Hallinan v. Fraternal Order of Police Chicago Lodge 7,* 570 F.3d 811, 820 (7th Cir. 2009). The Supreme Court explained in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007), that Rule 12(b)(6) dismissal is warranted if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face."

In making this assessment, the district court accepts as true all well-pled factual allegations and draws all reasonable inferences in the plaintiff's favor. S*ee Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009); *St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 625 (7th Cir. 2007).

Even though *Twombly* (and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)) retooled federal pleading standards, notice pleading remains all that is

required in a complaint. "A plaintiff still must provide only 'enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'" *Tamayo v. Blagojevich,* 526 F.3d 1074, 1083 (7th Cir. 2008). The level of detail the complaint must furnish can differ depending on the type of case before the Court. So for instance, a complaint involving complex litigation (antitrust or RICO claims) may need a "fuller set of factual allegations . . . to show that relief is plausible." *Id.* at 1083 (citing *Limestone Dev. Corp. v. Village of Lemont, Illinois*, 520 F.3d 797, 803–04 (7th Cir. 2008)).

The Seventh Circuit has offered further direction on what (post-*Twombly & Iqbal* ) a complaint must do to withstand dismissal for failure to state a claim. In *Pugh v. Tribune Co.,* 521 F.3d 686, 699 (7th Cir. 2008), the Court reiterated: "surviving a Rule 12(b)(6) motion requires more than labels and conclusions;" the allegations must "raise a right to relief above the speculative level." Similarly, the Court remarked in *Swanson v. Citibank, N.A.,* 614 F.3d 400, 403 (7th Cir. 2010): "It is by now well established that a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law."

Judge Posner explained that *Twombly* and *Iqbal:*

require that a complaint be dismissed if the allegations do not state a plausible claim. The Court explained in *Iqbal* that "the plausibility standard is not akin to a 'probability requirement,'

> but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949. This is a little unclear because plausibility, probability, and possibility overlap.
>
> . . .
>
> But one sees more or less what the Court was driving at: the fact that the allegations undergirding a plaintiffs claim could be true is no longer enough to save it. . . . [T]he complaint taken as a whole must establish a nonnegligible probability that the claim is valid, though it need not be so great a probability as such terms as "preponderance of the evidence" connote . . . After *Twombly* and *Iqbal* a plaintiff to survive dismissal "must plead some facts that suggest a right to relief that is beyond the 'speculative level.'" *In re marchFIRST Inc.,* 589 F.3d 901, 905 (7th Cir. 2009).

*Atkins v. City of Chicago,* 631 F.3d 823, 831–32 (7th Cir. 2011) (emphasis added); *see also Smith v. Med. Benefit Admin'rs. Group, Inc.,* 639 F.3d 277, 281 (7th Cir. 2011) (Plaintiff's claim "must be plausible on its face," that is, "The complaint must establish a nonnegligible probability that the claim is valid."). With these principles in mind, the Court turns to Count II of Brown's complaint.

### III. Analysis

Count II alleges a state tort claim for intentional infliction of emotional distress (IIED). In Illinois, to establish a *prima facie* case of IIED, a plaintiff must allege that: (1) defendant engaged in truly extreme and outrageous conduct; (2) defendant either intended that her conduct inflict severe emotional distress, or there was at least a high probability that the conduct would inflict severe emotional distress; and (3) the conduct did

in fact cause severe emotional distress. *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (applying Illinois law). The tort does not reach "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

CRC contends that Brown has failed to plead "severe and outrageous conduct," required under the first prong of IIED (Doc. 8, ¶ 3). Under Illinois law, a defendant's conduct must be such that the "'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim: Outrageous!'" *Doe v. Calumet City*, 641 N.E.2d 498, 507 (Ill. 1994) (quoting Restatement (Second) of Torts § 46 cmt. d (1965) (internal quotations omitted)). In *Mcgrath*, the Supreme Court of Illinois cited non-exclusive factors which can help inform this rather fluid standard. *See McGrath*, 533 N.E.2d at 809-10. One factor that influences the extreme and outrageous nature of the conduct is the degree of power or authority that the actor has over the plaintiff. *Id.*

In the context of an employer-employee relationship, courts have found extreme and outrageous behavior where the "employer clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment." *Honaker*, 256 F.3d at 491. Additionally, courts consider "whether the plaintiff is particularly susceptible to emotional distress

because of some physical or mental condition or peculiarity; behavior that otherwise might be considered merely rude, abrasive or inconsiderate may be deemed outrageous" if the actor knew the plaintiff was particularly susceptible. *Id.* at 492.

Assuming her assertions to be true and drawing all reasonable inferences in her favor, the Court finds that Brown's allegations are sufficient to withstand a motion to dismiss. Brown alleges CRC's store manager, Connie Holland (Holland), knew Brown was in a "weakened mental and physical condition." Upon Brown's return to work, she alleges Holland "was extremely upset with her, rude, making comments about [Brown's] poor work performance, and would bring [Brown] to tears with her negativity and harassing language," and generally subjected Brown to an "intolerable and unbearable work environment."

At this stage of the litigation, the Court finds that the alleged facts contained in the complaint state a cause of action against CRC for IIED. CRC challenges the severity of the alleged actions; an inquiry best left for summary judgment.[1]

---

[1] CRC's arguments center on the need for the conduct to be egregious in the employment context to support a claim for IIED. *See e.g. Harris v. First Fed. Sav. and Loan Ass'n. of Chicago,* 473 N.E.2d 457, 459 (Ill. App. 1984) ("Personality conflicts, questioning of job performance and job transfers, whether for disciplinary or management purposes, are unavoidable aspects of employment. Frequently, they produce concern and distress for the affected employee. Yet, if the distress from such incidents was deemed so severe that no reasonable person could be expected to endure it, nearly all employees would have a cause of action for intentional infliction of severe emotional distress.") (quoting *Heying v. Simonaitis,* 466 N.E.2d 1137, 1144 (Ill. 1984)). Instantly, the exact content and extent of the alleged harassment is unclear. The undersigned merely finds that drawing all inferences in Brown's favor, she adequately states a claim under the standards of *Twombly* and *Iqbal*.

## IV. Conclusion

Accordingly, the Court **DENIES** CRC's motion to dismiss Count II of Brown's complaint (Doc. 8).

**IT IS SO ORDERED**.

Signed this 13th day of May, 2013.

David R. Herndon
2013.05.13
16:32:43 -05'00'

**Chief Judge Herndon**
**United States District Court**